## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

In re Subpoena Issued to New York Media LLC,

                    Nonparty Respondent.

TAMARA GREEN, et. al.,

                             Plaintiffs,

          – against –

WILLIAM H. COSBY JR.,

                         Defendant.

Docket No. 16-MISC-099

## MEMORANDUM OF LAW OF NONPARTY RESPONDENT NEW YORK MEDIA LLC IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL

MILLER KORZENIK SOMMERS RAYMAN LLP

Mona Houck
David S. Korzenik

488 Madison Ave., Suite 1120
New York, New York 10022
(212) 752-9200
mhouck@mkslex.com
dkorzenik@mkslex.com

*Attorneys for New York Media LLC*

TABLE OF CONTENTS

Table of Authorities ……………………………………………………………….  ii

Preliminary Statement ……………………………………………………….  1

Background ……………………………………………………………….  2

Argument ……………………………………………………………….  3

    I.       The Information Sought Is Privileged Under New York's Shield Law ……  5

       A.  New York law governs this matter.  ………………………………………  5

       B.  *New York* Magazine is protected by the Shield Law.  ……………………..  5

       C.  Cosby has failed to meet any part of his burden. …………………………  8

          i.  Cosby has failed to establish that the information is highly
              material and relevant. ……………………………………………  8
         ii.  Cosby has failed to establish that the information is critical
              or necessary to any claim or defense. …………………………….  9
        iii.  Cosby has failed to establish that the material he demands
              is not obtainable from any other source. ……………………….  12

       D.  Cosby's asserted interested do not come close to outweighing
          the free press interest protected by the Shield Law. ………………………  14

    II.     The information sought is privileged under the state and federal constitutions.  16

    III.    New York Media has not waived any privilege. ……………………………..  17

Conclusion ……………………………………………………………….  19

Table of Authorities

Cases

*Baker v. F & F Investment*, 470 F.2d 778 (2d Cir. 1972) ..................................................... 3

*Baker v. Goldman Sachs & Co.*, 669 F.3d 105 (2d Cir. 2012) ................................................ 7

*Blum v. Schlegel*, 150 F.R.D. 42 (W.D.N.Y. 1993) ............................................................. 13

*Don King Prods., Inc. v. Douglas*, 131 F.R.D. 421 (S.D.N.Y. 1990) .................................... 11

*Flynn v. NYP Holdings, Inc.*, 235 A.D. 2d 907 (3d Dep't 1997) ........................................... 6

*Gonzales v. Nat'l Broad. Co.*, 194 F.3d 29 (2d Cir. 1999) ........................................ 9, 13, 15, 17

*In re Am. Broad. Companies, Inc.*, 189 Misc. 2d 805 (Sup. Ct. 2001) ........................... 6, 10, 11

*In re American Tobacco Co.*, 880 F.2d 1520 (2d Cir.1989) ................................................... 5

*In re Application to Quash Subpoena to Nat. Broad. Co., Inc.*,
  79 F.3d 346 (2d Cir. 1996) .............................................................................. 5, 10, 13

*In re McCray, Richardson, Santana, Wise, Salaam Litig.*,
  991 F. Supp. 2d 464 (S.D.N.Y. 2013) .............................................................................. 9

*Matter of Perito v. Finklestein*, 51 A.D.3d 674 (2d. Dept. 2008) ........................................ 11

*New England Teamsters & Trucking Indus. Pension Fund v. New York Times Co.*,
  No. 14 MISC. 59, 2014 WL 1567297 (S.D.N.Y. Apr. 17, 2014) ...................................... 12, 14

*O'Neill v. Oakgrove Construction Inc.*, 71 N.Y.2d 521 (1988) ........................... 3, 5, 6, 14, 16, 17

*Schoolcraft v. City of New York*, No. 10 CIV. 6005, 2014 WL 1621480 (S.D.N.Y. 2014) ... 17, 18

*Sikelianos v. City of New York*, No. 05 CIV. 7673, 2008 WL 2465120 (S.D.N.Y. 2008) ............ 9

*U.S. v. Grant*, No. 04 Cr. 207, 2004 U.S. Dist. LEXIS 28176, at *7 (S.D.N.Y. 2004) ............... 13

*von Bulow by Auersperg v. von Bulow*, 811 F.2d 136 (2d Cir. 1987) ........................................ 8

Statutes

New York Civil Rights Law § 79-h ........................................................................ *passim*

Rules

Fed. R. Civ. P. 45 ..................................................................................................... 15

Fed.R.Evid. 501 ........................................................................................................ 5

## PRELIMINARY STATEMENT

New York Media LLC submits this memorandum of law in opposition to Defendant William H. Cosby Jr.'s motion to compel a response to his subpoena seeking protected press materials and in vigorous support of New York's established protections for journalists.

The subpoena – unusually broadly cast – seeks unpublished material, including video outtakes, reporters' notes and unedited material from New York Media, a professional media company and publisher of *New York* magazine. The material was compiled and created in the course of producing a news article and online multimedia report that presented the accounts of women who have accused Defendant of sexual assault. The publication, *'I'm No Longer Afraid': 35 Women Tell Their Stories About Being Assaulted by Bill Cosby, and the Culture That Wouldn't Listen*, appeared in July 2015.[1]

New York Media is not a party to this lawsuit, yet Defendant has directed an overly broad and overreaching subpoena at the magazine, in the hopes that unknown and unspecified information might somehow aid Cosby in his ongoing battles with his accusers. Any information New York Media compiled in the preparation of the Article is protected by New York Civil Rights Law § 79-h (also known as the "Shield Law"), which applies in this diversity case, as well as by the New York State and U.S. Constitutions. Cosby mistakes the applicable standard. But, in any event, it is his burden to overcome the privilege under the Shield Law. He must, at a minimum, make a clear showing that the information he seeks is (i) highly material, (ii) critical to his claim and (iii) not otherwise available. Defendant has not done this and cannot do so. Accordingly, his motion to compel should be denied.

---

[1] The entire report is available at http://nymag.com/thecut/2015/07/bill-cosbys-accusers-speak-out.html

## BACKGROUND

The subpoena arises from a lawsuit alleging claims of defamation, invasion of privacy and intentional infliction of emotional distress against Cosby. *Green, et. al, v. Cosby,* D. Mass., No. 14-cv-30211. Cosby filed counterclaims alleging defamation, tortious interference and intentional infliction of emotional distress. At the center of these disputes are multiple accusations of sexual assault leveled against Cosby.

New York Media is a complete stranger to this lawsuit and is a target of the subpoena only because it reported on the accusations against Cosby. At the time of the *No Longer Afraid* report, the number of those accusations was growing, and the story engaged a matter of significant public controversy. *New York* editors sought a way not only to report the news but also to address the way women cope with sexual assault, the challenges in pursuing accusations and the way society reacts – or fails to do so. *See* accompanying Declaration of Jody Quon ("Quon Decl."), ¶¶ 4-5.  The result was a compelling multimedia report that collected the stories and portraits of 35 women, along with video interviews. The article won the prestigious George Polk Award in Journalism, the announcement of which noted that the article "instantly changed the Cosby narrative from gossipy he-said, she-said tales into a powerful case study examining abuse of power for sexual advantage and how survivors process such abuse." Quon Decl. ¶ 7.

The subpoena seeks a broad swath of unpublished material related to the *No Longer Afraid* report, including all documents related to any communications between the magazine and the six women interviewed who are also plaintiffs in the lawsuit; all notes, unedited transcripts, video or audio recordings or any other documents related to interviews of those six women; and

all documents related to any expenses paid in connection with the article.[2] Quon Decl. Ex. A. The indiscriminate breadth of the demands alone – lacking in any particularity – demonstrates that the subpoena is no more than a blind and inappropriate effort to sift through *New York*'s files in hopes of stumbling on something Cosby might possibly find useful in his litigation. The Shield Law prohibits just this sort of fishing, and Cosby's motion should be denied.


## ARGUMENT

### THE MOTION SHOULD BE DENIED
### AS IT SEEKS INFORMATION PROTECTED FROM DISCLOSURE

The need to protect the ability of the press to freely collect and edit news is the driving principle behind the New York Shield Law and its enforcement in New York courts. The Court of Appeals has explained the value this way:

> The autonomy of the press would be jeopardized if resort to its resource materials, by litigants seeking to utilize the newsgathering efforts of journalists for their private purposes were routinely permitted. ... The practical burdens on time and resources, as well as the consequent diversion of journalistic effort and disruption of newsgathering activity, would be particularly inimical to the vigor of a free press.

*O'Neill v. Oakgrove Construction Inc.*, 71 N.Y.2d 521, 526-27 (1988). The benefit of the law is not only to the press, but to society as a whole. The law reflects "a paramount public interest in the maintenance of a vigorous, aggressive and independent press capable of participating in robust, unfettered debate over controversial matters, an interest which has always been a principal concern of the First Amendment, *see e.g., New York Times v. Sullivan*, 376 U.S. 254 (1964)." *Baker v. F & F Investment*, 470 F.2d 778, 782 (2d Cir. 1972).

---

[2] To the extent the broad terms of the subpoena also encompass published material, that material is publicly available, and Cosby has submitted it with his motion.

The value of this protection is so great that to overcome it, as more fully discussed below, New York courts require a clear showing of a *specific* and *significant* need that cannot otherwise be met. What Defendant has offered does not come close to this standard. He issued a broad demand for access to "all" material "relating" in any way to six *New York* Magazine sources. He has failed to articulate any particular need for the material he seeks, and his justification for his demands is purely hypothetical.

For example, in describing why the subpoenaed information is "necessary" to his claim, Cosby states that "Plaintiff's unpublished statements to NYM *may* reveal a great deal about their defamation allegations." Defendant's Memo of Law ("Def. Memo") at 7 (emphasis added).

Cosby claims the statements *may* show

- "*Whether or not* Plaintiff's statements regarding Mr. Cosby have changed over time and to different sources." *Id.* (emphasis added).

And he claims they *might* show

- "*Whether or not* Plaintiffs were influenced or coached with during their interviews with NYM." *Id.* (emphasis added).

This is nothing but conjecture. The only clear showing here is that Defendant not only has no idea if the unpublished material he seeks contains this information, he has no idea if these things ever happened. Indeed, he has provided absolutely no basis for suggesting that they have, and his unsubstantiated attacks and improper speculation are not grounds for setting aside the privilege.

In short, the unpublished material collected in the preparation of *No Longer Afraid* is protected by a qualified privilege that Cosby cannot overcome.[3] He cannot show clearly and specifically, as he must, that the information he seeks is highly relevant, that he could not present

---

[3] By the express language of the subpoena's demands themselves, he specifically seeks privileged, unpublished material.

a defense or pursue his claims without it, and that such information could not be obtained from some other source, most notably the parties themselves. Disclosure of the material can therefore not be compelled and the motion should be denied.

**I.     The Information Sought Is Privileged Under New York's Shield Law**

      **a.   New York law governs this matter.**

The subpoena Cosby served is in connection with state law claims in a diversity case in the District of Massachusetts and was issued in the Southern District of New York. It demands the production in New York of outtakes and other unpublished material from a report produced in New York by New York Media, a New York-based magazine publisher. Any applicable privileges relating to the information are accordingly governed by New York law. *In re Application to Quash Subpoena to Nat. Broad. Co., Inc.*, 79 F.3d 346, 351 (2d Cir. 1996); *In re American Tobacco Co.*, 880 F.2d 1520, 1527 (2d Cir.1989) ("[I]n a diversity case the existence of a privilege is to be determined by reference to state law."); Fed.R.Evid. 501.

      **b.   *New York* Magazine is protected by the Shield Law.**

The New York Shield Law unquestionably covers *New York* Magazine and the unpublished material the subpoena seeks. The law protects professional journalists reporting on "nonconfidential news" from compelled disclosure of "any unpublished news obtained or prepared by a journalist or newscaster in the course of gathering or obtaining news." N.Y. Civ. Rights Law § 79-h(c).

Defendant mischaracterizes the reporter's privilege, describing it as "a rule intended to protect journalists from revealing their confidential sources." Def. Memo at 1. This is a clear misstatement of the privilege, as evidenced by extensive case law and the text of the statute itself. Defendant also claims that his unspecified need for the material should overcome the

privilege because "the information Mr. Cosby seeks was created with the expectation that it

could become public." *Id.* This is wholly illogical as the material sought was plainly

*unpublished*, which is precisely what the privilege protects. § 79-h(c).

Defendant's focus on confidentiality is of no relevance to this case or to the privilege that

applies here. In fact, "confidentiality or the lack thereof has little, if anything, to do with the

burdens on the time and resources of the press that would inevitably result from discovery

without special restrictions." *O'Neill*, 71 N.Y.2d at 527.  This is precisely why even though the

law provides absolute protection for confidential news, it also offers explicit qualified protection

for nonconfidential news. § 79-h(c).

The statute prohibits compelled disclosure

> unless the party seeking such news has made a clear and specific showing that the
> news:
>
> (i)      is highly material and relevant;
> (ii)     is critical or necessary to the maintenance of a party's claim, defense or
>          proof of an issue material thereto; and
> (iii)    is not obtainable from any alternative source.

*Id.* Courts require a clear and specific showing that a person seeking to overcome the privilege

has satisfied all three prongs of the test. *See, e.g., Flynn v. NYP Holdings, Inc.*, 235 A.D. 2d 907,

909 (3d Dep't 1997).  This is a serious burden that courts do not take lightly, finding that

disclosure should be compelled "only as a last resort." *In re Am. Broad. Companies, Inc.*, 189

Misc. 2d 805, 808 (Sup. Ct. 2001).

This privilege covers any professional journalist, which the statute defines as

> one who, for gain or livelihood, is engaged in gathering, preparing,
> collecting, writing, editing, filming, taping or photographing of news
> intended for a newspaper, magazine, news agency, press association or
> wire service or other professional medium or agency which has as one of
> its regular functions the processing and researching of news intended for
> dissemination to the public.

§ 79-h(a)(6). *New York* is a prominent news and culture magazine that clearly regularly

processes and researches news for publication. Quon Decl. ¶ 1. Although the subpoena does not

name any particular journalist, the statute also expressly covers any professional journalist's

employer, leaving no question that the statute extends to New York Media and the magazine it

publishes. § 79-h(f).

And the statute reaches all of the information sought by the subpoena, which consists of

unpublished news material gathered as *New York* journalists prepared the *No Longer Afraid*

report for publication. Indeed, it is almost as if Cosby's three broad demands track the language

of the statute by seeking exactly the material the statute protects. The material sought includes

notes, emails, video outtakes and communications with sources, all of which falls under the

statute's protection of "written, oral, pictorial, photographic, or electronically recorded

information or communication concerning local, national or worldwide events or other matters of

public concern or public interest or affecting the public welfare." § 79-h(8). It is well established

that the privilege protects journalists from revealing "unpublished details of the newsgathering

process." *Baker v. Goldman Sachs & Co.*, 669 F.3d 105, 109 (2d Cir. 2012), or from opening

their files to those seeking "to examine the reportorial and editorial processes." *Application of*

*Consumers Union of U. S., Inc.*, 495 F. Supp. 582, 586 (S.D.N.Y. 1980) ("Such discovery would

represent a substantial intrusion on fact gathering and editorial privacy which are significant

aspects of a free press.")

Defendant's suggestion that New York Media has not sufficiently demonstrated that it is

protected by the privilege is without merit. Def. Memo at 5. Defendant's assertion relies on the

*von Bulow* case, where the Second Circuit addressed a situation in which a friend of the

defendant who had never before published any kind of writing claimed she was writing a book

and attempted to assert the journalist's privilege. *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136 (2d Cir. 1987). Faced with a challenge to this assertion, the court explained that "whether a person is a journalist, and thus protected by the privilege, must be determined by the person's intent at the inception of the information-gathering process." *Id.* at 142. The purpose of the inquiry is to distinguish between a bona fide journalist and one who "gathers information for personal reasons." *Id.* at 143.

There can be no serious question that New York Media is a professional journalism organization and that the individuals who produced *No Longer Afraid* are professional journalists. Nor can there be any question that they were acting as professional journalists at the time they began gathering information for the report. Quon Decl. ¶¶ 4-6. Indeed, these journalists have been recognized with one of the highest awards in the profession for this report. *Id.* at ¶ 7. Defendant itself does not – and cannot – dispute this, and his suggestion that the privilege should not apply is frivolous.

### c.  Cosby has failed to meet any part of his burden.

#### i.  Cosby has failed to establish that the information is highly material and relevant.

Defendant must make "a clear and specific showing" that the information he seeks is "highly material and relevant." N.Y. Civ. Rights Law § 79-h(c). Cosby is asking the court to allow him to sift through the journalists' files to see "whether or not" they might possibly contain materials that might be of some value to his cause. All he has actually shown is that he has no idea if New York Media has any relevant information at all, and no idea whether any information from New York Media would be material in this case. Defendant's argument is actually supposition, hypothesizing that "Plaintiff's unpublished statements to NYM *may* reveal a great deal about their defamation allegations" and that these statements *might* show "whether or not"

Plaintiffs have made inconsistent statements. Def. Memo at 7 (emphasis added). Such pure speculation is far from the "clear and specific showing" required to overcome the privilege.

Cosby's reliance on the *Gonzales* standard is misplaced because the state statute unquestionably applies here. But he could not establish the necessary relevance even under the comparable but less exacting standard in *Gonzales v. Nat'l Broad. Co.*, 194 F.3d 29 (2d Cir. 1999). A district court applying the *Gonzales* standard rejected efforts to obtain outakes from a documentary about the Central Park Five, noting that – as here – "Defendants point to no particular interview or outtake that would provide the evidence they seek. Instead, Defendants only make general claims that the outtakes are likely to contain relevant material." *In re McCray, Richardson, Santana, Wise, Salaam Litig.*, 991 F. Supp. 2d 464, 470 (S.D.N.Y. 2013).

Cosby's complete failure to point to specific relevant information that New York Media's privileged materials *would* provide – not *might* provide – confirms that this is no more than a fishing expedition for any information that *might* exist and *might* somehow aid Cosby's case. This attempt to "sift through" New York Magazine's unpublished files should be denied. *Sikelianos v. City of New York*, No. 05 CIV. 7673 RJS/JCF, 2008 WL 2465120, at *1 (S.D.N.Y. June 18, 2008).

### ii. Cosby has failed to establish that the information is critical or necessary to any claim or defense.

Defendant must make "a clear and specific showing" that the information he seeks is "critical or necessary" to his claim or defense. N.Y. Civ. Rights Law § 79-h(c). Defendant's failure to provide anything more than speculation as to what he *might* find in New York Media's files also proves fatal to this prong of the test.

To prevail, Cosby must show that his claim "rises or falls" on the basis of specific information he seeks. As the Second Circuit has explained:

> We think that 'critical or necessary' as used in the statute must mean something more than 'useful,' particularly since the first statutory factor requires that the material sought must be shown to be 'highly material and relevant' in any event. Several courts have held that in order to find unpublished news to be critical or necessary within the meaning of § 79–h, there must be a finding that the claim for which the information is to be used virtually rises or falls with the admission or exclusion of the proffered evidence.

*In re Application to Quash Subpoena to Nat. Broad. Co., Inc*., 79 F.3d 346, 351 (2d Cir. 1996)(quotations omitted). Thus Cosby must establish much more than the mere possibility that he *might* find information that *might* be useful to his claim, which is at most what he has done.

Defendant claims to seek the unpublished material because it could possibly show "whether or not Plaintiff's statements regarding Mr. Cosby have changed over time and to different sources." Def. Memo at 7. Defendant offers not the slightest reason to believe that the material he seeks from New York Media could possibly demonstrate this. In fact, the account of every one of the 35 women included in the *No Longer Afraid* report had already been published elsewhere. Quon Decl. ¶ 4. Therefore, should he wish to compare varying statements over time to different sources, he is free to sift through the multitude of reports published over many months by different sources. He is not free to sift through press files of unpublished material.

In addition, Cosby's argument focuses only on the general possibility that the material might offer a way to challenge the credibility of his accusers. This is neither specific enough nor critical enough to prove necessary. "The test is not merely that the material be helpful or probative, but whether or not the defense of the action may be presented without it." *In re Am. Broad. Companies, Inc*., 189 Misc. 2d 805, 808 (Sup. Ct. 2001). It follows that

> when the legislature speaks of unpublished news being critical or necessary to the proof or a claim or defense, it does not have in mind general and ordinary impeachment material or matters which might arguably bear on the assessment of credibility of witnesses. … Rather, the privilege may yield only when the party seeking the material can define the specific issue, other than general

credibility, as to which the sought after interview provides truly
necessary proof. *Id.*

In any event, information sought only to attack credibility is not sufficient to overcome
the privilege. *Matter of Perito v. Finklestein*, 51 A.D.3d 674, 675 (2d. Dept. 2008). Defendant
misplaces his reliance on *Don King Prods., Inc. v. Douglas*, 131 F.R.D. 421, 422 (S.D.N.Y.
1990). In that case, a reporter sought to quash a subpoena for a recording of statements by Don
King. There, the court noted that the reporter had written an article in which he stated that the
recording included "statements made by King that, according to [the reporter], may alter the
course of the litigation." Thus, the reporter himself provided the argument that the material was
critical to the case.

Even if Defendant were able to dig through New York Media's files and come up with
something relevant, at best such information would likely only be cumulative of other evidence
obtained in discovery. Compelled disclosure is not appropriate in such situations. *Application of
Behar*, 779 F. Supp. 273, 275 (S.D.N.Y. 1991) (When material would be cumulative of other
evidence, it cannot be 'necessary or critical' to an action so as to override the First Amendment
privilege.")

Defendant here has not even made a credible argument that New York Media has any
particular information that would have any bearing on his case, let alone that it has any unique or
special information that would affect the outcome. Cosby's argument is so generic that were it to
prevail, the resulting standard could lead to a requirement that any or all of the countless media
outlets that have covered the Cosby controversy or interviewed any of his accusers would be
forced to throw open their files so Cosby could sift through in hopes of finding some unspecified
document that could possibly aid his case. That is specifically what the Shield Law prevents.

### iii.  Cosby has failed to establish that the material he demands is not obtainable from any other source.

Defendant must make "a clear and specific showing" that the information he seeks is "not obtainable from any alternative source." N.Y. Civ. Rights Law § 79-h(c). Cosby claims that he needs New York Media's material to test the credibility of his accusers. (See page 10.) Not only is this an inappropriate purpose for subpoenaing the press, it is wholly unnecessary in this case, where the best sources of the information sought are the accusers themselves, and they are parties to the lawsuit.

Defendant seeks to learn whether or not "Plaintiff's allegations have changed over time and to different sources." Def. Memo at 9. He claims this is possible only "by comparing one version of Plaintiffs' allegations to another, something that cannot be achieved through Plaintiffs' deposition testimony alone." *Id.*  This is simply untrue, for the depositions of the Plaintiffs would surely provide a version of their allegations, which obviously could be compared with any other of the many published versions. And an unsupported assertion that the depositions would not suffice is not enough to overcome the privilege. "Mere belief that an alternative source is unwilling to provide the information, without more, cannot compel a finding that information is not reasonably obtainable." *New England Teamsters & Trucking Indus. Pension Fund v. New York Times Co.*, No. 14 MISC. 59, 2014 WL 1567297, at *5 (S.D.N.Y. Apr. 17, 2014).

Even if it were true that deposition testimony would not be sufficient, it does not follow that New York Media's video is the only source of material that might show inconsistencies in the Plaintiffs' accounts. Defendant's argument on this point is circular: he wants New York Media's video, and New York Media is the only source of that video. But that misses the point. New York Media may be the only source of its own outtakes, but Cosby has a significant number

of other sources from which to obtain the underlying information in that video that he seeks, which is the accusers' stories.

It is the underlying information, not the video outtakes themselves, that controls.[4] *See Gonzales*, 194 F.3d at 36 (holding that "the outtakes contain *information* that is not reasonably obtainable from other available sources")(emphasis added). See also *U.S. v. Grant*, No. 04 Cr. 207, 2004 U.S. Dist. LEXIS 28176, at *7 (S.D.N.Y. Nov. 17, 2004)("The parties dispute whether the video itself must be available elsewhere or whether alternative sources of the information captured on it would suffice. ...While it is true that the Government cannot obtain further video images of the club from any other source, they have considerable evidence of drug selling and drug use at the Sound Factory [shown in the video]."); *In re NBC*, 79 F.3d at 353 ("However, it cannot be said that pertinent material is not obtainable elsewhere just because it is included in some out-takes"); *Blum v. Schlegel*, 150 F.R.D. 42, 46 (W.D.N.Y. 1993)("where the source is known and can be deposed, the availability of a deposition is an alternate source that must be pursued").

The accusers' stories are the information Defendant seeks, and he is required to establish that he has exhaustively tried and failed to obtain those stories elsewhere. He has not and can never show that, for the stories are indisputably available from many sources.

Rather than exhausting efforts to obtain the material from other sources, Cosby admits he has not even tried. In a motion to stay discovery in the Massachusetts District Court in February, Cosby emphasized that no prejudice would result from a stay because "the parties have only

---

[4] Indeed, if the underlying information were not the focus of the test and the availability analysis instead was limited only to a particular piece of video (as opposed to what is in the video), the test would be meaningless. The news organization would always be the only source of its own footage, there would never be any alternative source, and that prong of the test would disappear.

begun noticing depositions and exchanging discovery requests." No. 14-cv-30211, Dkt. 186 at

10. It is evident that he has not deposed Plaintiffs, and he admits that discovery is barely under

way, even though the case has been pending for well over a year.

Not only has Cosby not exhausted other alternatives, he has refused to even make an

effort. To defeat the privilege, he must at a minimum "make reasonable efforts through discovery

to obtain the information from alternative sources. *New England Teamsters,* 2014 WL 1567297,

at *4. In some cases, courts require even more: "Exhaustion of all other available sources of

information is sometimes required." *Id.*

### d.  Cosby's asserted interested do not come close to outweighing the free press interest protected by the Shield Law.

A significant purpose of the Shield Law is to protect reporters who cover matters of

public concern from the burdens of being drawn into private disputes as a result of that coverage.

*O'Neill*, 71 N.Y.2d at 526. Reporters' reputations for impartiality would be compromised if

sources saw them acting as investigative aids for private litigants or the government. This would

limit their ability to report on important stories, as sources and readers expect journalists to

maintain independence. Quon Decl. ¶ 8. Further, if reporters were required to provide documents

and evidence in any civil matter that has been in the news, they would simply not have the time

to do their jobs. "Journalists should be spending their time in newsrooms, not in courtrooms as

participants in the litigation process." *O'Neill*, 71 N.Y.2d at 533 (Bellacosa, J. concurring.)

Defendant belittles the potential burden of subpoenaing the press, contending that "the

actual burden imposed by the subpoena is slight" and that New York Media "should not be

allowed to hide behind generalized objections." Def. Memo at 12. This position ignores the

important First Amendment and public interest principles underlying the privilege that recognize

that burden. The Second Circuit has clearly and thoroughly explained the significance of the

subpoena burdens:

> If the parties to any lawsuit were free to subpoena the press at will, it
> would likely become standard operating procedure for those litigating
> against an entity that had been the subject of press attention to sift through
> press files in search of information supporting their claims. The resulting
> wholesale exposure of press files to litigant scrutiny would burden the
> press with heavy costs of subpoena compliance, and could otherwise
> impair its ability to perform its duties-particularly if potential sources were
> deterred from speaking to the press, or insisted on remaining anonymous,
> because of the likelihood that they would be sucked into litigation.
> Incentives would also arise for press entities to clean out files containing
> potentially valuable information lest they incur substantial costs in the
> event of future subpoenas. And permitting litigants unrestricted, court-
> enforced access to journalistic resources would risk the symbolic harm of
> making journalists appear to be an investigative arm of the judicial system,
> the government, or private parties.

*Gonzales*, 194 F.3d at 35.

Accordingly, the Shield Law puts the burden on Defendant to make a clear showing that

he has satisfied all three prongs of the test to overcome the privilege. *Flynn,* 235 A.D. 2d at 909.

*Cosby* has failed to satisfy any part of the test, as he cannot show that *New York* has any

information that is at all necessary to his underlying claims. He cannot come close to

outweighing the important interest in maintaining a free press. Cosby has not even satisfied his

responsibility under the federal rules, which require that he "take reasonable steps to avoid

imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P.

45(d)(1). Particularly in light of Cosby's failure to make any of the required showings, the

subpoena's broad demands for privileged information impose nothing but burden and expense on

New York Media, including compromising its ability to perform important journalistic work. *See*

Quon Decl.

15

Following Defendant's definition, every journalist who has covered the important public controversy over the Cosby accusations would be denied the reporter's privilege. The result would be a chilling effect not only on the media, which would have to weigh the burdens and costs of responding to endless such demands before pursuing matters of public interest, but also on crucial media sources – in particular in this case, victims of sexual assault who would be even more likely to avoid sharing their stories.

## II.     The information sought is privileged under the state and federal constitutions.

Protections for New York journalists are not limited to the Shield Law. The Court of Appeals has recognized that the guarantee of a free press in the New York State Constitution and the First Amendment to the U.S. Constitution each provide a qualified privilege to a reporter against compelled disclosure of confidential and nonconfidential material prepared or collected in connection with newsgathering. *O'Neill,* 71 N.Y.2d at 527.

In *O'Neill*, the Court of Appeals held that the reporter's qualified constitutional privilege, sourced in the free press guarantee of the State Constitution Article I, Section 8, extended to all information "prepared or collected in the course of newsgathering" and could be overcome only by satisfying the same rigorous tripartite test that was later codified in NYCRL §79-h(c). *Id.* at 524. The court recognized that this constitutional guarantee of a free press "independently mandates the protection afforded by the qualified privilege to prevent undue diversion of journalistic effort and disruption of press functions." *Id.* at 528. While the court acknowledged that the First Amendment also recognizes a reporter's qualified privilege, it noted that the "protection afforded by the guarantees of free press and speech in the New York Constitution is often broader than the minimum required by the First Amendment." *Id.*

16

At a minimum then, for the reasons that Cosby cannot compel production of the under §79-h, he cannot meet his burden under the State Constitution or the First Amendment. And because these constitutional provisions protect information without regard for the scope of the Shield Law, they provide independent bases for New York Media's privilege here. *Id.* at 527.

### III.    New York Media has not waived any privilege.

Cosby contends that New York Media has somehow waived the reporter's privilege because it did not produce a privilege log with its objections to the subpoena, yet he notably cites no cases in which this Circuit has found the press to have waived a privilege in such circumstances. Indeed, as Judge Sweet has noted: "The heavy costs of subpoena compliance would be a significant issue if reporters have to immediately prepare a privilege log upon being served with a subpoena. Such a requirement would incur a heavy burden on the press that would inhibit its ability to perform its duties." *Schoolcraft v. City of New York*, No. 10 CIV. 6005 RWS, 2014 WL 1621480, at *5 (S.D.N.Y. Apr. 22, 2014) (internal quotations omitted).

This is especially true in a case such as this one, where the subpoena broadly seeks "all documents .. relating to any communications" and "all notes … recordings or any other document … reflecting any interview." While a waiver may be appropriate against a party who refuses to comply with discovery rules, even parties are rarely required to produce a privilege log in the short time allowed to respond to the subpoena in this case.[5]  The underlying action in this case, for example, has been ongoing since 2014 yet the parties have barely started discovery.[6]

---

[5] Defendant's reliance on Rule 26, in any event, is unpersuasive, as that rule specifically applies to a *party's* assertion of privilege. *Schoolcraft*, 2014 WL 1621480, at *4. Although Rule 45 applies to nonparties, "there is no relevant case law in this Circuit regarding whether the press can waive its *Gonzales* privilege from failing to produce a privilege log three months after the service of the subpoena." *Id.*

[6] Defendant represented to the Massachusetts District Court in February that discovery was in the early stages. No. 14-cv-30211, Dkt. 186 at 10. Defendant, in fact, has recently been granted a

Any effort to produce a privilege log in the few weeks since the service of the subpoena would have imposed an enormous burden of time and cost on New York Media. As in *Schoolcraft,* "[f]inding waiver of privilege here would serve against the policy reasons for the privilege." 2014 WL 1621480, at *5.

Defendant's argument in favor of a waiver is also flawed because, despite his representation, no "meet-and-confer" took place. What Defendant characterizes as a meet-and-confer, by his own description, consisted of no more than New York Media serving objections to the subpoena; counsel for Cosby writing a letter in response; and counsel for New York Media stating that the company maintained its objections. Def. Memo at 3-4. Notably, Defendant's letter, his sole contribution to this "meet-and-confer," does not even mention a privilege log. Def. Memo, Decl. of Marshall Searcy, Ex. 4.

Further, Defendant has no need for a privilege log in this case. The rules allow for categorizing of withheld documents. *See* Local Rule 26.2(c). The category of documents for which New York Media asserts the privilege has been clear from the outset: unpublished materials collected in the course of newsgathering related to the *No Longer Afraid* report. This is precisely the material covered by the Shield Law. Any more detailed identification of documents would defeat the privilege itself, both by imposing the heavy burden of which Judge Sweet warned and by revealing the very information the privilege is intended to protect. The information typically furnished in an attorney-client privilege log (a different privilege) would itself be a violation of the reporter's privilege and would surely compromise it. No such log should be required of a journalist asserting the reporter's privilege. In fact, any such log would

---

stay of discovery as he defends himself in criminal action in Pennsylvania. Discovery for Plaintiffs has not been suspended. Dkt. No. 287.

be the beginning of the impermissible sifting process that the statute is designed to protect against.

## **CONCLUSION**

Based on the foregoing reasons, nonparty New York Media respectfully asks this Court to deny Defendant's Motion to Compel any production of documents.


DATED:      New York, New York          MILLER KORZENIK SOMMERS RAYMAN LLP
            April 8, 2016

                                        By: _____
                                            Mona Houck
                                            David S. Korzenik


                                        488 Madison Ave., Suite 1120
                                        New York, New York 10022
                                        (212) 752-9200
                                        mhouck@mkslex.com
                                        dkorzenik@mkslex.com

                                        *Attorneys for New York Media LLC*